Michael McShane (SB 127944)
Jonas P. Mann (SB 263314)
Dana M. Isaac (SB 278848)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Tel: (415) 568-2555
Fax: (415) 568-2556

Shane Rowley (*Pro hac vice* to be filed)
Nancy A. Kulesa (*Pro hac vice* to be filed)
Matthew Rand (*Pro hac vice* to be filed)
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
srowley@zlk.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERNON STANTON, individually and on behalf of all others similarly situated, | ) ) ) Case No. 3:14-cv-00294 |
| Plaintiff, | ) ) **CLASS ACTION COMPLAINT** |
| v. | ) ) |
| 23ANDME, INC., | ) ) <u>JURY TRIAL DEMANDED</u> |
| Defendant. | ) ) ) |

     Plaintiff Vernon Stanton ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, brings this Class Action Complaint against 23andMe, Inc. ("23" or the "Company"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

**Introduction and Summary of Action**

1.      This is a consumer class action brought on behalf of all persons and entities in the United States who have purchased 23's Personal Genome Service ("PGS") to find out about their genetics-related health problems ("Health Kit").

2.      23 sells the Health Kit through its website, www.23andme.com, and third party vendors such as Amazon.com.   When one of 23's customers purchase any PGS, including the Health Kit, 23 sends the customer a DNA Collection Kit ("DNA Kit"), which includes a saliva swab.  The customer uses the swab to collect a saliva sample, places the swab back in the DNA Kit, and mails the Kit to 23.   23 then purportedly runs a series of scientific analyses on the DNA contained in the saliva sample.  23 asserts that this analysis can provide its customers with accurate information about their genetic predisposition to a range of health factors such as coronary artery disease and arthritis.

3.      Though 23's claims are designed to sound scientific, they are not in fact based on any scientific testing.  The Company provides no clinical data to establish that its Health Kit is accurate, reliable, or safe for its advertised use.   Indeed, 23 failed to obtain the necessary authorization from the Food and Drug Administration ("FDA") to market, promote, and advertise the Health Kit.

4.      23 continued its marketing—a clear violation of the Federal Food, Drug, and Cosmetic Act ("FDC Act")—until December 6, 2013, when the FDA demanded that 23 suspend its health-related genetic tests until the FDA could complete its regulatory review.

5.      23's customers reasonably relied on 23's false and unsubstantiated claims when they purchased the Health Kits.  As a result of their reliance, 23's customers have been wronged and financially harmed.

CLASS ACTION COMPLAINT

**The Parties**

6.     Plaintiff Vernon Stanton is a resident of Hobbs, New Mexico.

7.     Plaintiff purchased two Health Kits from 23 on September 22, 2013 from 23andMe.com. Plaintiff paid $193.15 for his Kits, including $14.95 for shipping.

8.     23andMe, Inc. is a privately held Delaware Corporation with its headquarters and principal place of business in Mountain View, Santa Clara County, California.

**Jurisdiction**

9.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and Defendant are citizens of different states, Plaintiff has alleged a class action, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members of the prospective class.

10.     The Company has its principal place of business in the State of California. 23 conducts substantial business in California, including the sale and distribution of the Health Kits that are the subject of this suit. Because 23 has sufficient contacts with California and it purposefully availed itself of California's laws and markets, this Court may exercise personal jurisdiction over the Company.

11.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims occurred in this District. 23 has its principal place of business in this District.

**Class Action Allegations**

12.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons within the United States who purchased the Health Kit (the "Class").

13.     Excluded from the Class are: defendants; the officers, directors, or employees of any defendant; the parent companies and subsidiaries of 23; and 23's legal representatives and heirs or assigns.  Also excluded from the class are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

14.     This action is properly maintainable as a class action.

15.     The Class is so numerous that joinder of all members is impracticable.  Though the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class.

16.     Question of law and fact common to the Class include, *inter alia*:

a.     Whether 23's Health Kit used proven scientific methods to obtain the analysis promised for Class members;

b.     Whether the results obtained from the Health Kit are reliable and valid;

c.     Whether 23 advertised and sold the Health Kit with knowledge that it was not proven by scientific methods, was unreliable, and/or not valid;

d.     Whether the arbitration clause in 23's Terms of Service is unconscionable and/or whether it applies to the entire Class;

e.     Whether 23's Terms of Service contain unconscionable and/or illusory terms and language;

f.     Whether 23 obtained appropriate and timely approval from the FDA to market and sell the Health Kits;

g.     Whether Class members detrimentally relied on 23's representations about its Health Kit when making their purchases;

h.     Whether 23 was unjustly enriched;

CLASS ACTION COMPLAINT

i.      Whether 23 engaged in unfair, false, misleading, and/or deceptive trade practices; and

j.      Whether the Class is entitled to damages and/or other relief as a result of 23's wrongful conduct.

17.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of 23's wrongful conduct as alleged herein.

18.     Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to it or in conflict with those of the Class that Plaintiff seeks to represent.

19.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for the members of the Class.  Inconsistent rulings in separate actions might also establish incompatible standards of conduct for 23.

20.     Conflicting adjudications for individual Class members might, as a practical matter, be dispositive of the interests of the other members who are parties to the adjudication or substantially impair or impede their ability to protect their interests.

21.     23 has acted on grounds generally applicable to the Class, making appropriate final relief with respect to the Class as a whole.

### Further Substantive Allegations

*23's Business Model*

22.     23 sells two different types of PGS kits, the Health Kit and an ancestry kit.  Each kit tests a customer's DNA for certain types of information.  The Health Kit tests a customer's heath-related genetic information and the ancestry kit tests a customer's genetic lineage.

23.     Once a customer purchases a PGS kit from 23, 23 sends the customer a DNA Kit. The DNA Kit comes with a saliva swab, mailing materials, and instructions. The customer uses the swab to take a sample of his or her saliva. Then, using the mailing materials, the customer sends the swab back to 23, where 23 purportedly performs a series of scientific tests on the customer's DNA. Which tests 23 performs is based on the PGS kit that the customer purchased. If the customer bought the Health Kit, 23 asserts that it performs tests designed to determine an individual's genetics-related health traits, including over 240 "conditions."

24.     Once 23 has allegedly performed these analyses through undisclosed testing methods, the Company sends a "report" back to the customer that 23 claims to be scientifically accurate.

*23's False and Misleading Representations Concerning the Health Kit's Benefits*

25.     23 makes the following false and misleading claims concerning the efficacy of the Health Kit on its website:

> Learn hundreds of things about your health. Using your DNA information, 23andMe helps you know more about your health so you can take an active role in managing it. With reports on over 240+ health conditions and traits, here are a few of the things you'll learn about you.
>
> *******
>
> Plan for the future. Find out if your children are at risk for inherited conditions, so you can plan for the health of your family.
>
> *******
>
> Living well starts with knowing your DNA.
>
> *******
>
> Health tools – Document your family health history, track inherited conditions, and share the knowledge.
>
> *******

Drug response – Arm your doctor with information on how you might respond to certain medications.

*******

Below are a few examples [(diabetes, arthritis, coronary heart disease, breast cancer, plavis, lactose intolerance)] where we can help you learn more. And when you know more, you can make better lifestyle choices, look out for common conditions and take steps toward mitigating serious diseases.

23andMe is a DNA analysis service providing information and tools for individuals to learn about and explore their DNA. We use the Illumina HumanOmniExpress-24 format chip . . . . Our chip consists of a fully custom panel of probes for detecting single nucleotide polymorphisms (SNPs) selected by our researchers. The selection was made to maximize the number of actionable health and ancestry features available to customers as well as offer flexibility for future research.

*The FDA Bars 23 from Selling its Health Kit*

26.     Under the FDC Act, the FDA is authorized to ensure that the marketing and advertising made by companies like 23 are generally backed up by scientific proof and valid research. The FDA ensures that the tests that comprise the Health Kits live up to the assertions made about them by 23 in its marketing materials.

27.     On November 22, 2013, the FDA sent 23 a Warning Letter (the "November Letter"). In sum and substance, the FDA informed 23 that it had not received approval to market its Health Kit and, as such, it was in violation of the FDC Act.

28.     Specifically, in the November Letter, the FDA expressed doubts about whether the PGS tests, especially the tests associated with the Health Kit, performed as 23 warranted that they did. The FDA also said that it was concerned about the public danger surrounding false positives and negatives for serious health conditions purportedly tested by the Health Kit.

29.     The FDA stated that, "[t]o date, [23] has failed to provide adequate information to support a determination that the [Health Kits are] substantially equivalent to a legally marketed

predicate for any of the uses for which you are marketing it; no other submission for the [Health Kits] that you are marketing has been provided under section 510(k) of the [FDC] Act, 21 U.S.C. § 360(k)."

30. The FDA also said in the November Letter that, "The risk of serious injury or death is known to be high when patients are either non-complaint or not properly dosed; combined with the risk that a direct-to-customer test result may be used by a patient to self-manage, serious concerns are raised if test results are not adequately understood by patients or if incorrect results are reported."

31. Because 23 failed to satisfy the FDA's demands, the FDA ordered 23 to cease selling the Health Kit on December 6, 2013. The Company's website states: "At this time, we have suspended our health-related genetic tests to comply with the [FDA's] directive to discontinue new consumer access during our regulatory review process. In the future, you may be able to receive health-related results, dependent upon FDA marketing authorization."

32. Thus, the November Letter—and the Company's response to it—make clear that the Company lacked the necessary scientific data to backup its wide-ranging claims about the Health Kit's efficacy.

*23 Should Have Known that its Representations Were Misleading*

33. The sheer volume and consistency of the complaints made by customers should have alerted 23 to the misleading nature of its marketing.

34. Such reviews include:

> I ordered a kit several weeks ago, but I have yet to return it. Why? Because I read the (incredibly detailed) fine print of their privacy policy and started doing some research on genetic privacy. Even if you decide to opt-out of 23andMe's research program and don't give them any "Self-Reported" information, 23andMe still sells their partners more than enough data to connect your name and location (among other things) to your genetic information. For instance, 23andMe collects your "Web Behavior Information"...including your IP address, operating system, your ISP, browser type, cookies,

- 8 -

anything you mention in your emails to customer support, and worst of all: web beacons. These are special cookies that track all of your browsing history. A cookie from Facebook can instantly give 23andMe access to your FB profile name. Any profile picture you post on 23andMe can be downloaded by an app developer. App developers are given access to your traits. How many people in a specific zip code of a small town have 1) red, curly hair 2) are good at sprinting 3) have bad teeth 4) poor memory 5) and diabetes? All of this data -- combined with your "web behavior and genetic information -- makes it incredibly easy for any app developer (or drug company) to identify you (even if the developer (technically) only has access to your "anonymous" id number). It is especially easy to identify males who have some sort of relatively uncommon disease. This is a big issue in politics right now. It is called "re-identification" in case you want to learn more about it. You can also google "23andMe's API." Overall, 23andMe's privacy FAQ is very misleading, and possibly illegal.

*******

Even after sending me a replacement test they can't read my DNA. They are offering to refund the money I paid for the test but offered NO explanation as to why they couldn't read it. I followed the directions to the letter both times. This concerns me.

*******

Let's start with the lack of a phone number. If you can find the contact page, then you're lucky. A friend got the link to contact them through another site, and that was the only way I could. Anyway.. my ancestry results were vague and totally missed the mark. My health report was amusing to say the least. Apparently I have curly red hair and I'm likely to have either brown or green eyes. Well, I have straight jet black hair and my eyes are as dark, too. For my husband's it claims he doesn't have the bald gene ---- tell that to his bald spot. It claims I can eat dairy. Nope. Never could. The list goes on and on. It's a waste of money and I'm glad the FDA stepped in to stop them. All of the supporters of 23andme blindly accept their results, but most are not able to read raw data and decipher what is what. I cannot express my disappointment more, really. If only I could give this product a zero rating for a big fat fail.

*******

Not worth the risk of a very questionable study. The Terms of Agreement are invasive and not like any requirements for a legitimate study. I was very concerned about my private information, how it would be used, and to whom it would be made available.

CLASS ACTION COMPLAINT

**Plaintiff's Individual Allegations**

35.     On September 22, 2013, Plaintiff purchased two Health Kits from 23's website, 23andMe.com.

36.     Plaintiff spent $193.15 on the two Kits, $99.00 for the first and $79.20 for the second.  The shipping cost was $14.95.

37.     Plaintiff purchased one Kit for himself and the second for his wife.

38.     Plaintiff purchased the Kits so that he and his wife could learn more about their genetics-based health conditions.

39.     After receiving his DNA Kit in the mail, Plaintiff and his wife each collected their saliva samples, making sure to follow the instructions carefully.  Plaintiff then returned the DNA Kits to 23 through the mail.

40.     On December 6, 2013, Plaintiff received an email from the Chief Executive Officer of the Company stating: "23andMe has complied with the FDA's directive and stopped offering new consumers access to health-related genetic results while the company moves forward with the agency's regulatory review processes.  Be sure to refer to our 23andMe blog for updates."

41.     After receiving the December 6, 2013 email, Plaintiff wanted to call 23 to express his frustration.  However, after scouring the website, Plaintiff could not find a method to contact the Company.

**First Cause of Action**
**California False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     23 is a "person" within the meaning of Cal. Bus. & Prof. Code § 17506.

44. 23's Terms of Service state that "any disputes with 23andMe arising out of or relating to the Agreement [ ] shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods."

45. The Company engaged in false and misleading advertising—the very type of practices prohibited by the California False Advertising Law. The Company represented that customers who bought the Health Kit could "[l]earn hundreds of things about [their] health" and "[f]ind out if [their] children are at risk for inherited conditions." The Company also advertised that its customers could use the Health Kit to "[a]rm [their] doctor with information on how [they] might respond to certain medications."

46. The Company's representations are misleading in that they have the capacity, likelihood, and tendency to deceive and confuse consumers, including the Class members.

47. The Company knew or should have known that its representations and advertisements about the Health Kit were false and misleading.

48. The Company made these false and misleading advertisements with the intent of inducing customers to purchase the Health Kit.

49. Plaintiff purchased his Health Kit in reliance on the Company's false and misleading representations about the product. Had Plaintiff known the truth about the Health Kit—*i.e.*, that it is not based on scientifically accepted principles and did not produce valid and reliable results—he would not have purchased one.

50. As a result of 23's acts, omissions, and practices, the Class members have suffered actual damages.

51. Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff seeks an injunction from this Court, barring 23 from continuing with the advertisements and representations

CLASS ACTION COMPLAINT

about its Health Kit. Plaintiff also requests an order awarding Plaintiff and the Class members restitution of money wrongfully acquired by the Company.

## Second Cause of Action
## Negligent Misrepresentation

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     The Company made misrepresentations to the Class members including, without limitation, the misrepresentation that the Health Kits were effective, based on widely accepted scientific principles, and would produce results that were reliable and valid.

54.     The Company made these representations without reasonable grounds for believing that they were true. The Company, and its authorized agents, made these representations directly on the Health Kit's packaging and in various written materials directed to the public. The purpose of these representations was to induce customers to purchase Health Kits.

55.     Plaintiff and the Class members purchased the Health Kits in reliance on the Company's misrepresentations. Plaintiff and the Class members would not have purchased the Health Kits had they known the true facts about their efficacy.

56.     Plaintiff's reliance on 23's misrepresentations was justified and reasonable because they were made by individuals who held themselves out as experts in the field of DNA testing.

57.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the Class members have suffered actual damages. The Class members are entitled to recover such damages, including punitive damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs for the suit, and such other relief as set forth below.

**Third Cause of Action**
**Unjust Enrichment**

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     As a result of their unlawful conduct, as described above, 23 was unjustly enriched.

60.     The Company benefited from their unlawful acts and it would be inequitable for it to be permitted to retain any of the ill-gotten gains resulting from payments made by the Class members in reliance on 23's false, misleading, and unlawful representations.

61.     Plaintiff and the Class members are entitled to the amount of the Company's ill-gotten gains resulting from the Company's unlawful, unjust, and inequitable conduct.

62.     Plaintiff and Class members may have no adequate remedy at law.

**Fourth Cause of Action**
**Breach of Warranty of Merchantability and Fitness**
**For a Particular Purpose**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     The Company developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, and sold the Health Kits.

65.     The Company impliedly warranted that its Health Kits were of merchantable quality and fit for the ordinary, common, and intended uses for which they sold the Health Kits. Specifically, the Company falsely implied that the Kits could be used to identify whether a customer had any genetics-based health concerns.

66.     The Company knew, or should have known, that the Class members purchased the Health Kits for the purposes described above.

67. The Company also knew, or should have known, that the Class members were relying on its expertise and judgment to furnish a product that lived up to the representations that the Company made.

68. The Company breached this implied warranty when it sold the Health Kits to the Class members because the Kits were not fit for the purpose for which they were sold.

69. As a direct and foreseeable result of the foregoing acts, omissions, and practices, Plaintiff and the Class members have suffered actual damages as described herein, and the Class members are entitled to recover such damages, including punitive damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs for the suit, and such other relief set forth herein.

### Fifth Cause of Action
**Deceit by Concealment**
**Cal. Civ. Code §§ 1709, 1710**

70. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71. The Company made false and misleading material representations and omissions to the public, including Plaintiff and the Class members, about the Health Kits.

72. The Company knew, or should have known, that its representations were untrue.

73. The Company made these false representations with the intent of inducing Plaintiff and the Class members to rely on them and purchase a Health Kit.

74. The Company willfully deceived the Class members by concealing the true facts about its Health Kits.

75. Plaintiff and the Class members reasonably believed that 23's representations about the Health Kits were true and, in reliance on those representations, the Class members purchased a Health Kit from 23.

76.     Plaintiff would not have purchased the Health Kit had he known that it was not based on scientific evidence and that it did not produce results that were reliable and valid.

77.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the Class members suffered actual damages as described herein, and these Class members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief, and reasonable attorneys' fees.

### Sixth Cause of Action
### Violations of California Consumer Legal Remedies Act
### Cal. Civ. Code §§ 1750 *et seq.*

78.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

79.     The Company is a "person" within the meaning of Cal. Civ. Code § 1761.

80.     Plaintiff and the Class members are "consumers" within the meaning of Cal. Civ. Code § 1761.

81.     Plaintiff brings this cause of action for declaratory and injunctive relief.

82.     Plaintiff purchased a Health Kit from 23 for personal, family, or household use.  This purchase, and the purchases by the Class members, constitutes a "transaction" within the meaning of Cal. Civ. Code § 1761.

83.     The Company's marketing, labeling, advertising, and sales of the Health Kits violated the Consumer Legal Remedies Act in the following ways:

        a.      The Company represented that the Health Kits have characteristics, uses, and benefits which they lacked;

        b.      The Company represented that the Health Kits were of a particular standard, quality, or grade, which they were not; and

   c.  The Company advertised the Health Kits with an intent not to sell them as advertised.

84.  The Company's actions were done with a conscious disregard for the rights of Plaintiff and the Class members.

85.  The Company's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the Consumer Legal Remedies Act because the Company continues to represent that the Health Kits have characteristics and abilities which they lack.

86.  Pursuant to Civil Code § 1782, Plaintiff will notify Defendant in writing by certified mail of the alleged violations of § 1770 and demand that the same be corrected.

87.  Any waiver of a claim under the Consumer Legal Remedies Act by Plaintiff and/or members of the Class is unenforceable and void.

88.  Plaintiffs request the Court enjoin 23 from further violations.

89.  .

### Seventh Cause of Action
### Violation of California Unfair Competition Law
### Cal. Civ. Code §§ 17200 *et seq.*
### "Unlawful" element

90.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

91.  The Company is a "person" within the meaning of Cal. Bus. & Prof. Code § 17201.

92.  The Company unfairly, unlawfully, deceptively, and misleadingly represented what the Health Kits could do. The Company represented that customers who bought the Health Kit could "[l]earn hundreds of things about [their] health" and "[f]ind out if [their] children are at risk for inherited conditions." The Company also advertised that its customers could use the Health Kit to "[a]rm [their] doctor with information on how [they] might respond to certain medications."

93.     In fact, the Health Kits could not do any of these things and the results they provided were not scientifically reliable or valid.

94.     Plaintiff and the Class members bought the Health Kits in reliance on the Company's unlawful, deceptive, unfair, and misleading representations about the Kits.

95.     Plaintiff would not have purchased the Health Kits had he known that they were not reliable or valid.

96.     The Company's business practices—as alleged herein—are unlawful because they violate the FDC Act and California law.

97.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the Class members have suffered actual damages as described herein and are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief, and reasonable attorneys' fees.

98.     Pursuant to  § 17203 of the California Business and Professions Code, Plaintiff seeks an order from this Court enjoining 23 from continuing to engage, use, or employ its unfair and fraudulent advertising and marketing the sale and use of the Health Kits.

**Eighth Cause of Action**
**Violation of California Unfair Competition Law**
**Cal. Civ. Code §§ 17200 *et seq.***
**"Unfair" and "fraudulent" elements**

99.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

100.    Plaintiff bought a Health Kit in reliance on 23's false and misleading advertisements and representations about the Kit.  Plaintiff would not have purchased the Kit had he known that the Kit was unreliable.

101.     The Company's false and misleading representations about the Health Kit's benefits violate the long standing public policy of the State of California that businesses must provide scientific evidence to substantiate the health benefits that they claim that their product provides.

102.     The Company's false promises that the Health Kit will help its customers determine if their "children are at risk for inherited conditions" and "[u]nderstand [their] genetic health risks" are improper and unfounded.

103.     The Company knew or should have known that its claims about the Health Kits were untrue and likely to deceive the public into believing that the Health Kits have uses and benefits that they do not actually posses.

104.     Plaintiff and the Class members' injuries are substantial and not outweighed by any real benefits to the consumers.  Plaintiff and the Class members could not reasonably have avoided the information because the Company intentionally misled the consuming public by means of the claims made with respect to the Health Kits as set forth herein.

105.     The Company's wrongful business practices and procedures constituted, and continue to constitute, unfair competition.

106.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the Class members have suffered actual damages as described herein.

107.     Pursuant to § 17203 of the California Business & Professions Code, Plaintiff and the Class members seek an order of this Court enjoining the Company from continuing to engage, use, or employ its unfair and fraudulent practice of advertising the sale and use of the Health Kits.

108.     Plaintiff and the Class members seek an order requiring the Company to cease making the unfair and fraudulent claims about its Health Kits that are described above.

109.     Plaintiff requests an order awarding Plaintiff and the Class members restitution of the money wrongfully acquired by 23 by means of 23's false and misleading representations.

CLASS ACTION COMPLAINT

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.      For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating his attorneys as Class counsel;

B.      For an award of equitable relief as follows:

i.      Enjoining the Company form making any claims about the Health Kits found to violate California or federal law, including but not limited to, the FDA rules and regulations,

ii.      Requiring the Company to make full restitution of all monies wrongfully obtained as a result of its conduct;

C.      For an award of attorneys' fees;

D.      For actual damages in the amount to be determined at trial;

E.      For actual, statutory, and punitive damages as may be provided for by statute if the demand corrections do not occur within the thirty day notice period;

F.      Costs of this suit;

G.      Pre- and post-judgment interest on any amounts awarded; and

H.      For such further relief as may be just and proper.

### **JURY DEMAND**

Plaintiff demands a trial by jury.


DATED: January 15, 2014                 AUDET & PARTNERS, LLP


By:      /s/ Jonas P. Mann

Michael McShane (SB 127944)
Jonas P. Mann (SB 263314)
Dana M. Isaac (SB 278848)
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460

- 19 -

San Francisco, CA 94105
Tel: (415) 568-2555
Fax: (415) 568-2556
mmcshane@audetlaw.com
jmann@audetlaw.com
disaac@audetlaw.com

Shane Rowley (*Pro hac vice* to be filed)
Nancy A. Kulesa (*Pro hac vice* to be filed)
Matthew Rand (*Pro hac vice* to be filed)
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
srowley@zlk.com
nkulesa@zlk.com
mrand@zlk.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT

**Affidavit of Venue**

1. I, Vernon Stanton, declare as follows:

2. I am a Plaintiff in this action and a citizen of the State of New Mexico. I have personal knowledge of the facts herein and, if called as a witness, I could and would testify competently thereto.

3. This District is the proper venue for this action under California Civil Code Section 1780(d) in that Defendants maintain their headquarters and principal place of business in Mountain View, Santa Clara County, California.

I declare under penalty of perjury under the law of the State of California that the foregoing is true and correct.

Executed this _17th___ Day of January, 2014 at Hobbs, New Mexico.

_____
Vernon Stanton

- 1 -
Affidavit of Venue